IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

KAREN S. DEARMOND, :
:
    Plaintiff, :
:
vs. : CIVIL ACTION 13-0073-CG-M
:
CAROLYN W. COLVIN, :
Commissioner of Social Security,:
:
    Defendant. :

REPORT AND RECOMMENDATION

In this action under 42 U.S.C. § 405(g), Plaintiff seeks judicial review of an adverse social security ruling which denied a claim for disability insurance benefits (Docs. 1, 16). Oral argument was heard on November 25, 2013. Upon consideration of the administrative record, the memoranda of the parties, and oral argument, it is recommended that the decision of the Commissioner be affirmed and that this action be dismissed.

This Court is not free to reweigh the evidence or substitute its judgment for that of the Secretary of Health and Human Services, *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983), which must be supported by substantial

1

evidence. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). The substantial evidence test requires "that the decision under review be supported by evidence sufficient to justify a reasoning mind in accepting it; it is more than a scintilla, but less than a preponderance." *Brady v. Heckler*, 724 F.2d 914, 918 (11th Cir. 1984), *quoting Jones v. Schweiker*, 551 F.Supp. 205 (D. Md. 1982).

At the time of the most recent administrative decision, Plaintiff was fifty-four years old, had completed high school as well as a business college educational course for legal secretaries (Tr. 36), and had previous work experience as an office assistant to a property tax collector (Doc. 18 Fact Sheet). In claiming benefits, Dearmond alleges disability due to injuries suffered in a motor vehicle accident as well as cervical spine degenerative joint disease, degenerative joint disease of the left knee, right carpal tunnel syndrome, and fibromyalgia (Doc. 18 Fact Sheet).

The Plaintiff filed an application for disability insurance benefits on October 11, 2006 (Tr. 92-96; *see also* Tr. 16). Benefits were denied following a hearing by an Administrative Law Judge (ALJ) who determined that although she could not perform her past relevant work, Dearmond was physically capable

of performing specified jobs in the light and sedentary ranges of work (Tr. 16-29).

Dearmond filed an action in this Court, seeking review of the ALJ's decision.  On February 29, 2012, this Court determined that the ALJ's decision was not supported by substantial evidence, reversed the ALJ's decision, and remanded the action back to the Social Security Administration (hereinafter *SSA*) for further action.  *Dearmond v. Astrue*, Civil Action 11-0244-M (S.D. Ala. February 29, 2012) (Doc. 25).[1]  Judgment was entered for Plaintiff that same date (*id.* at Doc. 26).

On remand, the Appeals Council vacated the previous ALJ decision (Tr. 481-84).  Following a supplemental hearing, a new ALJ determined that Plaintiff was capable of performing her previous work as an office clerk (Tr. 650-70).  "The Plaintiff chose not to file exceptions with the Appeals Council and the Appeals Council did not choose to review this matter on its own" (Doc. 16, p. 3).

Plaintiff filed this action on February 19, 2013, claiming that the opinion of the ALJ is not supported by substantial evidence.  Specifically, Dearmond alleges that:  (1) The ALJ committed reversible error in deviating from this Court's Remand

---

[1]The Court will cite this previous action as *Dearmond I*.

3

Order in the previous action; and (2) the ALJ did not properly consider the conclusions of her treating physician (Doc. 16). Defendant has responded to—and denies—these claims (Doc. 21).

Dearmond first claims that the ALJ committed reversible error in deviating from this Court's Remand Order in the previous action. The specific claim, as framed by Plaintiff, is as follows:

> Whether the ALJ's deviation from this Court's Memorandum Opinion and Order, in conducting a de novo hearing, setting a more strenuous RFC than found by the ALJ in the adverse decision under review, relying on VE testimony based on the more strenuous RFC and concluding that the Plaintiff could perform her past relevant work in contrast to the previous finding that she was unable to perform any of her past relevant work constituted reversible error.

(Doc. 16, p. 3).

In Dearmond's prior action, the undersigned summarized the relevant evidence of record and then held that "the ALJ's finding of Plaintiff's residual functional capacity (hereinafter *RFC*) [was] inconsistent with the hypothetical questions posed of the [Vocational Expert]." *Dearmond I*, Doc. 25, at p. 15. The Court went on to conclude that the ALJ's decision was not supported by substantial evidence because it was not readily

4

apparent that Dearmond was capable of performing the jobs that the ALJ found that she could do (*id.* at pp. 16-17). In remanding this action, the Court instructed the SSA to conduct "further administrative proceedings consistent with this opinion, to include, at a minimum, a supplemental hearing for the gathering of evidence regarding what work Plaintiff [could] perform" (*id.* at p. 17).

On remand, the ALJ "held a supplemental hearing, developed a new residual functional capacity, posed new hypothetical questions to the vocational expert and cited new representative occupations which would accommodate an individual with the claimant's vocational profile" (Tr. 650). In doing this, the ALJ determined that Dearmond could perform her past relevant work as an office clerk (T. 668); she further determined that there were other light work jobs that she could perform.

Plaintiff argues that the ALJ was in error in conducting a *de novo* hearing and reaching determinations that exceeded findings by the previous ALJ. More specifically, Dearmond objects to the ALJ's finding that she could perform a full range of light work and could perform her past relevant work (Doc. 16, p. 7).

The Court first notes that the ALJ did not find that

5

Plaintiff could perform a full range of light work (Tr. 668) ("Through the date last insured, if the claimant had the residual functional capacity to perform the full range of light work, a finding of 'not disabled' would be directed by Medical-Vocational Rule 202.21 and Rule 202.14. However, the claimant's ability to perform all or substantially all of the requirements of this level of work was impeded by additional limitations"). Dearmond is correct, though, in arguing that the ALJ found her physically more capable now than she had been found previously (Tr. 26-27).

Because Plaintiff had made arguments to the ALJ that she was limited in what she could do on remand, the ALJ addressed these concerns in her opinion. Specifically, she stated as follows:

> First, it would turn the District Court's Order of Remand on its head to conclude the undersigned is bound by all the findings and conclusions of the very decision being remanded. Second the Order of the Appeals Council clearly states, "the Appeals Council vacates the final decision of the Commissioner of Social Security and remands this case to an Administrative Law Judge for further proceedings consistent with the order of the court." Exhibit 5A at 3. Thus, it can be seen that the prior decision has been vacated and is not binding on the undersigned.
> Moreover, the undersigned held a

> supplemental hearing and considered
> additional/new evidence.  Therefore, the
> principle of *res judicata* would not be
> applicable in this instance.
>     Finally, if "a claimant timely appeals
> an ALJ decision (i.e., requests review by
> the Appeals Council), the ALJ decision will
> become final and binding if the Appeals
> Council denied the request for review and:
>     * the claimant does not timely file a
> civil action, or
>     * the claimant timely files a civil
> action and a court affirms the ALJ
> decision."
>
> HALLEX I-2-9-1
>
> In this instance, the claimant *did* file a
> timely civil action, but the District Court
> did *not* affirm the ALJ decision.  Therefore,
> the prior decision did not "become final and
> binding."

(Tr. 651-52) (emphasis in original).

The Court can find no fault in the ALJ's reasoning.  We remanded the action back for the gathering of new evidence; the ALJ gathered new evidence and, after considering it along with the previously-submitted evidence, reached a new decision.  To limit the ALJ to the non-disturbed findings in the prior decision would render the supplemental hearing meaningless.

The Court further notes that Plaintiff has not pointed to any errors in the ALJ's characterization of the evidence.  Though Dearmond pointed out that the ALJ did not accept the

7

Court's summary of Dr. Crotwell's evidence (Doc. 16, pp. 6-7; Tr. 651), the ALJ was correct: Dr. Crotwell did not find, as the Court stated, that "Dearmond could never use her hands for pushing and pulling of arm controls or simple grasping" (Dearmond I, Doc. 25, p. 17). Rather, Crotwell found that Plaintiff could not do those things *repetitively* (Tr. 334). The Court was wrong in its summary and the ALJ correctly set the record straight.

The Court finds no error in the way the ALJ conducted the remand of this action. Dearmond has not convinced the Court that the ALJ did not do as she was ordered. Plaintiff's claim otherwise is without merit.

Dearmond's second claim is that the ALJ did not properly consider the conclusions of her treating physician. Plaintiff refers to the opinions of her Neurologist, Dr. Daniel K. Stubler (Doc. 16, pp. 11-12). While urging the Court to find that Stubler's opinions are significant, Dearmond made no specific or new arguments with regard to this claim other than to incorporate her argument from the previous action by reference (Doc. 16, p. 12) ("As set out more fully in the previous Plaintiff's Brief, incorporated herein, Dr. Stubler's restrictions clearly limited the Plaintiff to less than

8

sedentary work activity").[2] The evidence from the Neurologist, as summarized in the previous action, is as follows:

> On September 26, 2006, Dr. Daniel K. Stubler, a Neurologist, examined Plaintiff whose blood pressure was 98/70; motor strength was 5/5 (Tr. 223-24, 287). Deep tendon reflexes were 2/4 throughout; sensory examination revealed some positive Tinel's sign of the right carpal tunnel and cubital tunnel on the right and negative on the left. Gait was normal. Stubler's impression was: (1) most likely encephalopathy related to depression and stress; (2) post-concussive headache syndrome, history of fibromyalgia and vertigo; (3) left lumbar radiculitis as well as cervical radiculitis status post cervical surgery; and (4) probable right carpal tunnel syndrome as well as right cubital tunnel syndrome. The doctor prescribed a low fat and low cholesterol diet.
>
> \*\*\*
>
> On December 5, 2006, Neurologist Stubler reported that Dearmond was walking on her own and that her motor strength was 5/5; sensory examination was intact (Tr. 302-03; *see generally* Tr. 297-303). He noted some positive Tinel's sign of the right carpal tunnel and cubital tunnel on the right and negative on the left. Stubler's impression was 1) most likely encephalopathy; (2) post-concussive headache syndrome; (3) left lumbar radiculitis as well as cervical radiculitis; and (4)

---

[2] The Court suggests that Plaintiff should, at the very least, have attached a copy of her prior argument. It would have been more appropriate, though, to state the assertions anew. Nevertheless, the Court has reviewed that prior argument. Dearmond I, Doc. 16, pp. 15-18.

probable right carpal tunnel syndrome as well as right cubital tunnel syndrome; he prescribed Gabitril[3] and Wellbutrin.[4] Plaintiff saw the doctor again on April 27, 2007 with complaints of dizziness and depression for which he discontinued the Wellbutrin and prescribed Antivert (Tr. 300-01). Stubler examined Dearmond on August 23 and noted no real changes. The next day, the doctor completed a physical capacities evaluation in which he indicated that Plaintiff was capable of sitting for one hour at a time and two hours during an eight-hour day; she could stand and walk for one hour, each, during an eight-hour day (Tr. 284). It was Stubler's opinion that Plaintiff could lift up to ten pounds occasionally and carry up to five pounds on an occasional basis; she was not capable of using either hand or leg controls. Dearmond would never be able to bend, squat, crawl, or climb, but could reach occasionally. The doctor indicated that she was moderately limited in her ability to work at unprotected heights and driving automobile equipment and mildly limited in being around moving machinery. Stubler also completed a pain questionnaire in which he found her to suffer pain to such an extent as to be distracting from performing her daily activities; he thought that physical activity would greatly increase her pain (Tr. 285-86). The doctor thought that medication would cause her to suffer some side effects but that they would not be serious. On November 21, 2007, the doctor noted that Dearmond said she was exercising more and was undergoing hormonal changes; his examination and diagnostic impression

---

[3]*Gabitril* is an anti-epilepsy drug. **Error! Main Document Only.**Physician's Desk Reference 2352-53 (62nd ed. 2008).

[4]**Error! Main Document Only.**Wellbutrin is used for treatment of depression. *Physician's Desk Reference* 1120-21 (52nd ed. 1998).

>   was, essentially, the same as previous
>   visits (Tr. 298).  On February 20, 2008, Dr.
>   Stubler's examination and impression showed
>   no real changes (Tr. 297).

Dearmond I, Doc. 25, pp. 5-9.

The Court further notes the examination notes from a consultative physician, summarized previously, that will be set out herein in full:

>   On July 17, 2008, Orthopedic Surgeon Dr.
>   William A. Crotwell, III examined Plaintiff who
>   could flex her knees Indian style:  "She brings
>   her knees up to her chest, flexing them 130 to
>   140 degrees at the knees and bringing the knees
>   up to her chest with no problems, rocking back
>   and forth, moving without any problems" (Tr. 332;
>   *see generally* Tr. 331-34).  Toe and heel walk was
>   fairly normal; forward flexion only 30 to 40 with
>   poor attempt.  "Extension only 10 percent and
>   after just seeing her flex more than 150 degrees,
>   she could only flex 10 percent this time, so this
>   is definitely inconsistent" (*id.*).  Crotwell
>   noted no tenderness over the paraspinous areas
>   and the L5-S1 generally, but none over the lumbar
>   spine; sensory exam was spotty over the lower
>   extremities.  Motor was 5/5; straight leg raise
>   was ninety degrees with no pain sitting while
>   straight leg raise, while lying down, was ninety
>   degrees with increased pain on the right and left
>   with plantar flexion.  There was "[n]o change
>   with dorsiflexion on the right and slightly
>   increased with dorsiflexion on the left, which is
>   again inconsistent" (*id.*).  Plaintiff had
>   hyperextension of both elbows about ten degrees,
>   full flexes, supination, and pronation; Dearmond
>   complained of tenderness in general over both the
>   medial and lateral epicondyles.  In the cervical
>   spine, she had forward flexion of fifty percent,

11

> extension of forty percent, and lateral motion of
> fifty percent; "[s]ensory was totally decreased
> in the right arm over no dermatome with some very
> strange, spotty changes" (*id.*).  Grip strength
> was normal.  Crotwell's impression was that she
> had post-operative cervical fusion C3 through C7
> with no radiculopathy at the present time; he
> further noted a history of elbow pain, a history
> of carpal tunnel syndrome, a history of lumbar
> pain, and a history of knee pain, though he found
> no objective evidence of any of these.

Dearmond I, Doc. 25, pp. 10-11.  Dr. Crotwell went on to complete a physical capacities evaluation in which he indicated that Dearmond was capable of sitting four, standing three, and walking two hours at a time with the ability to sit eight, stand six, and walk four hours during an eight-hour day (Tr. 334). The Orthopedic expressed the opinion that Plaintiff could lift five pounds continuously, ten pounds frequently, and up to twenty pounds occasionally and could carry five pounds continuously and up to twenty pounds occasionally.  Crotwell indicated that Dearmond could not use her hands repetitively for simple grasping or pushing and pulling of arm controls, though she could engage in fine manipulation repetitively; she was capable of using her feet for pushing and pulling of leg controls.  Dearmond could occasionally bend, squat, and reach, but could never crawl or climb.

On July 9, 2009, Dr. Stubler noted that Plaintiff was alert

12

and oriented in three spheres; cranial nerves II through XII were intact and she was walking on her own (Tr. 343). Motor strength was 5/5, sensory examination was intact, and deep tendon reflexes were 2/4 throughout; there was some positive Tinel sign of the right carpal tunnel and cubital tunnel on the right and negative on the left. Gait and station were relatively normal. Stubler refilled her Cymbalta[5] prescription, increased the Klonopin[6] and Robinul prescriptions and set a new appointment for six months later.

Nineteen months later, on February 18, 2011, Plaintiff told Stubler that she had had more migraine headaches, starting in the neck and radiating to her left side; the auras were worse (Tr. 639). The neurological examination was no different than it had been on his prior examination. The Neurologist increased her Neurontin[7] and Flexeril[8] and prescribed Restoril[9] for sleep.

---

[5] Cymbalta is used in the treatment of major depressive disorder. **Error! Main Document Only.***Physician's Desk Reference* 1791-93 (62nd ed. 2008).

[6] *Klonopin* is a class four narcotic used for the treatment of panic disorder. **Error! Main Document Only.***Physician's Desk Reference* 2732-33 (62nd ed. 2008).

[7] **Error! Main Document Only.***Neurontin* is used in the treatment of partial seizures. *Physician's Desk Reference* 2110-13 (52nd ed. 1998).

[8] **Error! Main Document Only.**Flexeril is used along with "rest and physical therapy for relief of muscle spasm associated with acute, painful musculoskeletal conditions." *Physician's Desk Reference* 1455-57 (48th ed. 1994).

[9] **Error! Main Document Only.***Restoril* is used for the short-term treatment of insomnia. *Physician's Desk Reference* 1894-96 (52nd ed.

On January 23, 2012, Dearmond complained that her headaches were about the same; Stubler noted that there was no change in the neurological exam results (Tr. 641). Medications were continued and Plaintiff was to return in six months. Seven months later, on August 28, 2012, Dearmond complained that she had been experiencing more dizziness, a double vertigo, with disorientation; she also had weakness, tingling, and pain intermittently in the arms (Tr. 642). Generally, Plaintiff was suffering more malaise along with neck and shoulder pains. Dearmond had gained 29 pounds. The Neurologist's examination had the same results as the prior two visits with the exception that Cranial nerve II had a down-beading nystagmus and the carotids were without bruits. Dr. Stubler prescribed Meclizine for Plaintiff's vertigo and scheduled the next appointment for four months later.

On September 2, 2012, Neurologist Stubler completed a physical capacities evaluation form in which he indicated that Plaintiff could sit one hour continuously, but could not stand or walk for any sustained period; she could sit for two hours, stand one, and walk one hour during an eight-hour day (Tr. 644). The Doctor found Dearmond capable of lifting up to ten pounds

---

1998).

and carrying five pounds occasionally; she was not capable of using her hands for repetitive simple grasping, pushing and pulling of arm controls, or fine manipulation. Plaintiff could not use her feet for repetitive pushing or pulling; she could occasionally reach, but could never bend, squat, crawl, or climb. Stubler also completed a pain assessment in which he indicated that Dearmond's pain was distracting to adequately perform daily activities or work; physical activity would greatly increase her pain to a degree that it would cause her to be distracted from completing her task (Tr. 645). Plaintiff's medication would cause some side effects but not to an extent that they would create serious problems (Tr. 646).

The ALJ summarized the evidence from Dr. Stubler (Tr. 660-61), but found his conclusions unsupported by the medical evidence (Tr. 664-66). Specifically, the ALJ found as follows: his conclusions were not supported by his own treatment notes; he treated Dearmond only sporadically; his conservative treatment did not indicate disabling impairments; and his conclusions were inconsistent with the conclusions of Dr. Crotwell.

The Court has reviewed the ALJ's conclusions and finds them supported by the substantial evidence. The ALJ explained each

15

conclusion, pointing to the specific evidence on which she relied in reaching it.  The Court finds no merit in Dearmond's claim that the ALJ did not properly consider the opinions and conclusions of her treating physician, Dr. Stubler.

Dearmond raised two claims in bringing this action.  Both are without merit.  Therefore, upon consideration of the entire record, the Court finds "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Perales*, 402 U.S. at 401.  Therefore, it is recommended that the Secretary's decision be affirmed, *see Fortenberry v. Harris*, 612 F.2d 947, 950 (5th Cir. 1980), that this action be dismissed, and that judgment be entered in favor of Defendant Carolyn W. Colvin and against Plaintiff Karen S. Dearmond.

NOTICE OF RIGHT TO FILE OBJECTIONS

A copy of this report and recommendation shall be served on all parties in the manner provided by law.  Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court.  *See* 28 U.S.C. § 636(b)(1); FED.R.CIV.P. 72(B); S.D. ALA. L.R.72.4. In order to be specific, an objection must identify the specific

finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

DONE this 26th day of November, 2013.

                                              s/BERT W. MILLING, JR.
                                              UNITED STATES MAGISTRATE JUDGE